Filed 4/17/23  P. v. Garnica CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RUBEN GARNICA,<br><br>    Defendant and Appellant. | F084907<br><br>(Fresno Super. Ct. No. CF78236946)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

* Before Detjen, Acting P. J., Franson, J. and De Santos, J.

## INTRODUCTION

In 1979, appellant and defendant Ruben Garnica (appellant) was convicted of first degree murder and sentenced to life in prison with the possibility of parole. In *People v. Garnica* (1981) 121 Cal.App.3d 727 (*Garnica*), this court ordered correction of his custody credits and otherwise affirmed his conviction and sentence on direct appeal.

In 2021, appellant filed a petition for resentencing pursuant to former Penal Code section 1170.95[1] and asserted he was entitled to relief because he was convicted based on the felony-murder rule and/or the natural and probable consequences doctrine. The prosecution filed opposition supported by the jury instructions given at appellant's trial, and argued he was convicted based on malice and his intent to kill. The trial court denied the petition.

Prior to the decision in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant did not file a supplemental brief on his own behalf. We affirm.

## FACTS[2]

"In 1977 appellant was a lieutenant in the Nuestra Familia, a prison gang which was originally organized to provide security to Mexican-American prisoners but which expanded into various forms of criminal activity outside prison.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated. Appellant filed his petition under former section 1170.95. As will be explained below, the statute was amended effective January 1, 2022, and then renumbered as section 1172.6 without further substantive changes on June 30, 2022. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 714; Stats. 2022, ch. 58 (Assem. Bill. 200), § 10, eff. June 30, 2022.)

[2] The following facts are from this court's opinion in *Garnica, supra,* 121 Cal.App.3d 727, that affirmed appellant's conviction on direct appeal; the district attorney included the opinion as an exhibit in support of its opposition to appellant's petition.

"Appellant's affiliation with Nuestra Familia and high rank in that organization were confirmed by Art Beltran, a former member of the family who had at one time occupied the number three position in the entire organization. Beltran gave the following testimony about Nuestra Familia. It is organized along military lines and its soldiers are promoted to higher rank on the basis of their service to the organization. Beltran said the Nuestra Familia maintained several 'hit lists' containing names of the individuals considered enemies. Some of the groups considered inimical to the Nuestra Familia are the Mexican Mafia, the Aryan Brotherhood and the United White People's Party. Every lieutenant in Nuestra Familia was responsible for '[seeing] to it that something was done about the people on the list.' The higher-ups schooled their subordinates as to the identity of the gang's enemies and a lieutenant could, on his own initiative, order his soldiers to execute a known enemy of the Nuestra Familia.

"Guadalupe Ramirez testified he was a member of Nuestra Familia and appellant was his superior in that organization. In March 1977, Ramirez and appellant were together in a store when a minor confrontation occurred with a man named Robert Fuller. Fuller gave appellant and Ramirez some 'hard looks.' Ramirez and appellant suspected that Fuller was a member of one of their rival gangs – the Aryan Brotherhood; appellant said he would check on it. The next thing Ramirez heard on this subject was when appellant told him to go find Fuller and to kill him. Appellant provided Ramirez with a revolver and an assistant, Carlos Gonzalez. Ramirez and Gonzalez went looking for

---

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 406, fn. 9.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*People v. Clements*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).) We have recited the factual statement from appellant's direct appeal to place appellant's arguments in context and will not rely on that factual statement to resolve appellant's appeal.

Fuller; when they found him at about 9 p.m. on the evening of March 24, 1977, Ramirez shot Fuller to death.  Ramirez then reported to appellant what he had accomplished and the two men watched the T.V. news to learn that Fuller was indeed dead.

"Marla Klemmer testified that she had worked for appellant selling heroin and collecting money from prostitutes.  She was also Ramirez's girlfriend.  She was with appellant and Ramirez when the minor confrontation with Fuller occurred in the store.  After that confrontation, appellant's group returned to appellant's house.  Ms. Klemmer overheard appellant tell Ramirez that Fuller was an Aryan Brother and that Ramirez was going to have to 'hit' him.  Later Ms. Klemmer heard appellant congratulate Ramirez on the good job he had done."  (*Garnica, supra,* 121 Cal.App.3d at pp. 730–731, fn. omitted.)

## PROCEDURAL BACKGROUND

On December 26, 1978, an information was filed in the Superior Court of Fresno County that charged appellant with the murder of Fuller (§ 187) and alleged a prior prison term enhancement (§ 667.5, subd. (b)).

**Trial and Instructions**

In or about April 1979, appellant's jury trial began.

The jury was instructed on first and second degree murder, express and implied malice; and conspiracy to commit murder.  It was not instructed on any other felony offenses.  The jury was instructed on principals and aiding and abetting; the pattern instruction included language about natural and probable consequences, but this language was crossed out by interlineation.

The jury was not instructed on the felony-murder rule or any theory of imputed malice.  A felony-murder instruction was requested, and it was marked as withdrawn.

**Verdict and Sentence**

On April 17, 1979, appellant was convicted of first degree murder.  Appellant admitted the prior prison term allegation.

4.

On May 15, 1979, the trial court sentenced appellant to life in prison with the possibility of parole.

**Direct Appeal**

In 1981, this court affirmed appellant's conviction in his direct appeal. (*Garnica, supra*, 121 Cal.App.3d 727.) This court rejected his argument that the trial court should have suppressed Ms. Klemmer's testimony under *People v. Hitch* (1974) 12 Cal.3d 641, based on the failure of police to preserve a tape recording of the first interview with her. We also rejected appellant's argument that the trial court erroneously admitted evidence of the uncharged offense of attempted murder, and the claim that the prosecutor committed prejudicial error in closing argument by commenting on appellant's failure to testify in violation of *Griffin v. California* (1965) 380 U.S. 609. We ordered recalculation of his credits and otherwise affirmed. (*Garnica, supra*, 121 Cal.App.3d at p. 730.)

**Parole Hearing**

On March 3, 2016, appellant appeared before the Board of Parole hearings, and testified under oath that he had been a "supervisor" in Nuestra Familia, he gave the order to kill Fuller, he "[o]rdered the hit – ordered the killing" because Fuller was a member of the Aryan Brotherhood and an enemy of Nuestra Familia, Ramirez was also a member of Nuestra Familia, and Ramirez committed the murder. (CT 68, 73, 76-82)

## APPELLANT'S PETITION

On June 14, 2021, appellant filed, in pro. per., a petition in the trial court for resentencing of his first degree murder conviction pursuant to former section 1170.95, and requested appointment of counsel.

Appellant's supporting declaration consisted of a preprinted form where he checked boxes that stated (1) he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine;

5.

(2) at trial, he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; (3) he could not be convicted of first or second degree murder because of changes made to section 188 and 189, effective January 1, 2019; and (4) he could not be convicted of first degree murder because of the changes made to section 189 because he was not the actual killer; he did not, with the intent to kill, act, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of first degree murder; he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony; and the victim was not a peace officer.

**The People's Opposition**

On July 21, 2021, the district attorney filed opposition and asserted appellant was not convicted under the felony-murder rule or the natural and probable consequences doctrine, and he was the principal who acted with malice aforethought.

In support of the opposition, the district attorney filed this court's published opinion that affirmed appellant's conviction, a transcript of his 2016 parole hearing, and the jury instructions that were given at his trial, and those that were withdrawn or refused.

**Appointment of Counsel and Further Briefing**

On April 11, 2022, the court appointed counsel to represent appellant in the petition.

On May 9, 2022, appellant filed, in pro. per., a reply to the opposition, and restated the issues rejected in his direct appeal. Appellant also argued he was factually innocent, the trial court was biased in favor of the prosecution, the court drafted the instructions to ensure his conviction in violation of due process, and he was eligible for resentencing because he was improperly convicted as an aider and abettor.

On May 20, 2022, the court appointed another attorney to represent appellant because of a conflict.

On August 4, 2022, appellant's counsel filed a hearing brief, and argued the court could not consider the opinion that affirmed appellant's conviction in his direct appeal, or appellant's statements at the parole board hearing, and the petition stated a prima facie case for relief.

**The Court's Hearing on the Petition**

On August 22, 2022, the court held a hearing on the petition. The district attorney argued appellant failed to make a prima facie case for relief because he was convicted of first degree premeditated murder, and the jury's verdict was based on finding appellant acted with the intent to kill. The court asked appellant's counsel if it could consider the jury instructions, and counsel submitted on that issue.

The court stated that it would not rely on this court's prior opinion from appellant's direct appeal or the "new" evidence from the parole board hearing.[3] The court denied appellant's petition based on the jury's instructions and the verdict.

On September 9, 2022, appellant filed a timely notice of appeal.

## DISCUSSION

### I. Appellant Review and Delgadillo

On December 19, 2022, the California Supreme Court issued the opinion in *Delgadillo*, *supra*, 14 Cal.5th 216, and held a *Wende* analysis is not applicable to a superior court's order that denies a petition for postconviction relief under section 1172.6. (*Id*. at p. 222.) *Delgadillo* held that instead of using the process outlined in *Wende*, appointed counsel and the appellate court should do the following: "When appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts

---

[3] A defendant's sworn statements at a parole board hearing are admissible at an evidentiary hearing on a section 1172.6 petition. (See, e.g., *People v. Myles* (2021) 69 Cal.App.5th 688, 706; *People v. Anderson* (2022) 78 Cal.App.5th 81, 93; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 583.)

bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter." (*Delgadillo*, at pp. 231–232.)

"If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues. [Citations.] If the defendant does not file a supplemental brief or letter, the Court of Appeal may dismiss the appeal as abandoned. [Citation.] If the appeal is dismissed as abandoned, the Court of Appeal does not need to write an opinion but should notify the defendant when it dismisses the matter. [Citation.] While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Delgadillo, supra*, 14 Cal.5th at p. 232.)

*Delgadillo* stated counsel filed a *Wende* brief in that case, along with a declaration that counsel had advised the defendant that he could personally file a supplemental brief raising any issues. The appellate court sent a notice to the defendant that he could file a supplemental brief, but that notice did not state the appeal would be dismissed if he failed to do so. (*Delgadillo, supra*, 14 Cal.5th at pp. 223–224.) *Delgadillo* held the appellate court's notice to the defendant was "suboptimal" because "it indicated that the *Wende* procedures would apply when they did not, and it did not inform [the defendant] that the appeal would be dismissed as abandoned if no supplemental brief or letter was filed." (*Id*. at pp. 222, 232, 233.)

As a result, *Delgadillo* conducted its own independent review of the record "voluntarily in the interest of judicial economy," and determined the defendant was not entitled to relief under section 1172.6. (*Delgadillo, supra*, 14 Cal.5th at p. 222.)

*Analysis*

On December 8, 2022, prior to the decision in *Delgadillo*, appellate counsel filed a *Wende* brief with this court, that included counsel's declaration that his client was advised he could file his own brief with this court.

On the same date, we informed appellant that he could file a letter in this matter stating any grounds that he wanted this court to consider, and if he did not do so within 30 days, "the court will assume you have nothing further to add."

On January 13, 2023, appellant filed a motion with this court for an extension of time to file a supplemental brief. On the same date, this court granted appellant's motion and extended time to March 8, 2023. Appellant did not file a supplemental brief.

As in *Delgadillo*, this court's notice to appellant must be deemed "suboptimal" because he was not informed his appeal would be dismissed as abandoned if he did not file a supplemental brief. Accordingly, even though *Wende* is inapplicable in this situation, we will conduct our own independent review of the record. (*Delgadillo, supra*, 14 Cal.5th at p. 233.)

## II.     Section 1172.6

We review Senate Bill No. 1437's amendments of sections 188 and 189, the enactment of former section 1170.95, and subsequent statutory amendments.

"Effective January 1, 2019, Senate Bill No. 1437 … amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a

9.

crime.' " (*People v Harden* (2022) 81 Cal.App.5th 45, 50–51; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," initially codified in former section 1170.95. (*Strong, supra*, 13 Cal.5th at p. 708, fn. omitted; *Lewis, supra*, 11 Cal.5th at p. 959.) The initial version of former section 1170.95 permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill No. 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) made substantive amendments to former section 1170.95 that were consistent with *People v. Lewis, supra*, 11 Cal.5th 952, and also " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes. (*People v. Saibu, supra*, 81 Cal.App.5th at p. 714.)

Section 1172.6, subdivision (a) thus states:

"(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or

10.

manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."[4]  (§ 1172.6, subd. (a).)

The court shall appoint counsel if requested by petitioner.  (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response.  The petitioner may file and serve a reply after the response is served.  (*Id.* at subd. (c).)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause.  If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."  (§ 1172.6, subd. (c).)

If an order to show cause is issued, "the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence…."  (§ 1172.6, subd. (d)(1).)

---

[4] While not applicable herein, section 189 was amended to allow for felony-murder liability where the victim is a peace officer.  (§ 189, subd. (f).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens…."[5] (§ 1172.6, subd. (d)(3).)

## III. Appellant Was Ineligible for Relief as a Matter of Law

We have reviewed the record and find the trial court complied with the procedural requirements of section 1172.6 – it appointed counsel to represent appellant, received further briefing, conducted a hearing, and stated the reasons it was denying his petition.

We further find the court correctly found appellant was ineligible for resentencing as a matter of law. In determining whether a petitioner made a prima facie case for relief, the court may review the record of conviction that allows the court "to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that … culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently

---

[5] "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing" in determining whether he made a prima facie case for relief. (*People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted.)

addressed as part of a single-step prima facie review process." (*Lewis, supra,* 11 Cal.5th at p. 971 & fn. 6.)

As explained above, the record and opinion from a petitioner's direct appeal are part of the record of conviction. (*Lewis, supra*, 11 Cal.5th at p. 972.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*People v. Clements*, *supra*, 75 Cal.App.5th at p. 292; *Lewis*, at p. 972.)

The jury instructions are part of the record of conviction and may be reviewed to make the prima facie determination, because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion,' " which must wait to occur until after an order to show cause issues. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, overruled to the extent that it is not inconsistent with *Lewis, supra*, 11 Cal.5th 952; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251–1252; *People v. Offley* (2020) 48 Cal.App.5th 588, 599.) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong, supra*, 13 Cal.5th at p. 708.)

Appellant was ineligible for resentencing as a matter of law because the jury instructions show he was not convicted of first degree murder based on the felony-murder rule, the natural and probable consequences doctrine, or any theory of imputed malice. The jury was instructed on direct aiding and abetting, and the amendments enacted by Senate Bill No. 1437 (2017–2018 Reg. Sess.) did not eliminate direct aiding and abetting liability for murder "because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 848.) In addition, the jury was instructed on conspiracy to commit murder, it was not instructed on any other felony offenses, the amendments did not affect the legal determination that conspiracy to

commit murder "is based on the conspirator defendant's own subjective *mens rea*: conspiracy to murder requires that a defendant either act with malice or intend to kill." (*People v. Whitson* (2022) 79 Cal.App.5th 22, 35, fn. omitted.)

## **DISPOSITION**

The court's order of August 22, 2022, denying appellant's petition, is affirmed.